OPINION
{¶ 1} Appellants Kimberly and John Jennings appeal a judgment of the Court of Common Pleas, Domestic Relations Division, of Licking County, Ohio, which modified the dissolution decree of the marriage of appellant Kimberly Jennings and appellee Christopher Spiert to reflect appellant John Jennings is the natural biological father of one of the minor children, but declined to modify the parental rights and responsibilities order in the decree of dissolution as they pertain to appellee. Specifically, appellee continues to pay child support for the child, and will enjoy parenting time. Appellants assign a single error to the trial court:
 {¶ 2} "The trial court erred when the trial court judge granted a non-parent, second petitioner-appellee, parenting time with the minor child against the wishes of the biological parents and in contravention of Troxel v. Granville and its Ohio progeny."
 {¶ 3} The magistrate to whom this matter was referred filed her decision on February 13, 2003. In it the magistrate made extensive findings of fact and conclusions of law. On July 1, 2002, the trial court entered a judgment decree dissolving the marriage of appellant Kimberly Spiert Jennings and appellee Christopher Allen Spiert. They had been married on February 15, 1998, and two children had been born prior to the marriage, Miranda Spiert, born December 31, 1994, and Christopher Allen Spiert, born October 22, 1997. Although the parties had not yet married they were residing together and appellee was listed on the child's birth certificate as the father. Appellee believed the child was his biological son, and the parties named the child after appellee.
 {¶ 4} Prior to the dissolution, and without appellee's knowledge, appellants and the child underwent genetic testing which revealed appellant John Jennings was the biological father of Christopher.
 {¶ 5} Not long after the entry of dissolution, appellant Kimberly Spiert began denying companionship with Christopher to appellee. Appellee continued to enjoy companionship with his daughter Miranda.
 {¶ 6} In November of 2002, appellant Jennings filed a motion for relief from judgment pursuant to Civ. R. 60(B), and a motion to join an additional party, namely, appellant John Jennings. Appellants sought to modify all provisions of the decree of dissolution relating to the minor child Christopher Allen Spiert including child support and parenting time.
 {¶ 7} The trial court found John Jennings to be the natural biological father of Christopher and designated Kimberly and John Jennings as residential parents, but refused to modify the parental rights and obligations between appellee and the minor child. The court found appellee has established, and maintained a father-child relationship with Christopher. The court also ordered appellants to arrange for psychological assessments for both minor children, and, if the psychiatrist determines within her sound discretion the children would benefit from joint counseling sessions with one or more parties in this case, then the parties shall all fully cooperate.
 {¶ 8} Appellants argue the decision of the United States Supreme Court in Troxel v. Granville (2000), 530 U.S. 57,120 S.Ct. 2054, 147 Lawyers Ed.2d 49, requires reversal of the trial court's decision. We do not agree.
 {¶ 9} In Troxel, the U.S. Supreme Court reviewed an action arising out of Washington State's Revised Code, which permits any person to petition for visitation rights at any time, and authorizes the State's Superior Court to grant such rights whenever visitation may serve a child's best interest. In the case before the Supreme Court, Jennifer and Gary Troxel petitioned a Washington Supreme Court for the right to visit their grandchildren, Isabelle and Natalie Troxel. Jennifer and Gary Troxel are the parents of Brad Troxel, the natural father of Isabelle and Natalie. Troxel and the girls' mother never married, but Brad Troxel lived with his parents and regularly brought his daughters for visitations. Brad Troxel died in May, 1993, and at first, the grandparents continued to see the girls on a regular basis. However, in October of 1993, the girls' mother indicated she wished to curtail their visitation with her daughters to one short visit per month. In response, the grandparents commenced the action, and the Superior Court entered a visitation decree ordering visitation one weekend per month, one week during the summer, and four hours on both of the petitioning grandparents' birthdays. The girls' mother appealed, and the Washington State Supreme Court found the grandparents could not obtain visitation of Isabelle and Natalie, because the Washington statute unconstitutionally infringed upon the fundamental rights of the parents to raise their children. The Washington State Supreme Court found two problems with the non-parent visitation statute. First, the State is only permitted to interfere with the rights of the parents to rear their children as they chose only to prevent harm to a child. The visitation statute fails to require any threshold showing of harm. The second problem with the statute, found by the Washington State Supreme Court, is over breadth. The statute permits any person to petition for visitation at any time, only upon a showing of the best interest of the child. The Washington State Supreme Court found parents have a right to limit visitation of their children with third persons, and as between parents and judges, the parents should be the ones to choose whether to expose their children to certain people or ideas.
 {¶ 10} Upon review, the United States Supreme Court found the Washington State Supreme Court statute was overbroad, and infringed on the parent's fundamental right to make decisions concerning care, custody, and control of children. The Supreme Court's discussion of how it reached this decision is most instructive. First, the court found there is ordinarily no reason for the State to interject itself into the private realm of the family where there is no allegation a parent is unfit. The court noted the problem, however, was not that the State intervened, but that when it did so it gave no special weight to the mother's right to determine her daughters' best interest. Instead, the statute appeared to have the opposite presumption, namely favoring non-parent visitation. In other words, it placed upon the mother the burden of disproving visitation would be in her daughters' best interest, and thus failed to protect her fundamental rights.
 {¶ 11} The U.S. Supreme Court also took issue with the trial court's approach to visitation. The U.S. Supreme Court found where the case involves nothing more than a disagreement between the court and the parent concerning the child's best interest, the parent had the right to make decisions regarding her children. The Supreme Court declined to determine whether the due process clause required all non-parental visitation statutes to include a showing of harm or potential harm as a condition preceding visitation or to decide the precise scope of the parental due process right in the visitation context, Troxel at 58.
 {¶ 12} The Supreme Court's opinion details the demographic changes of the past century which make it difficult to speak of the average American family. The composition of families varies greatly from household to household, including many single-parent households with persons outside the nuclear family being called upon to assist in the everyday tasks of childrearing. The court found most states have non-parental visitation statutes, which represent the states' recognition of the changing realities of the American families. The states have sought to protect the welfare of the children by protecting the relationships those children form with third parties.
 {¶ 13} The Supreme Court noted there is a constitutional dimension to the right of parents to direct the upbringing of their children, and it is cardinal that the custody, care and nurture of the child rest first in the parents whose primary function and freedom include preparation for obligations the state cannot supply nor can it hinder, Troxel at 65-66, citations deleted.
 {¶ 14} In reviewing the facts of the Troxel case, the Supreme Court found there was no allegation or finding the children's mother was unfit. The Supreme Court found this aspect is important, because there exists a presumption fit parents act in the best interest of their children, Id. citations deleted. The Supreme Court found the problem was not that the Washington State Supreme Court intervened, but that when it did so it gave no special weight to the parent's determination of her daughters' best interest. The Supreme Court found in an ideal world, parents might always seek to cultivate the bonds between parents and grandparents and children, but our world is far from perfect, but the decision whether an inter-generational relationship is beneficial in any specific case is for the parent to make in the first interest. If this decision becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination, Troxel at 70.
 {¶ 15} Finally, the Supreme Court found an important fact in the Troxel case was the mother never sought to cut-off visitation entirely, but rather, simply preferred to restrict the visitation to a time shorter than that requested by the grandparents. The issue in the Troxel case as conceded by all parties was how much time for visitation should be set aside, and how the visitation should be structured. The Supreme Court reviewed other state statutes which expressly provides courts may not award visitation unless a parent has denied or unreasonably restricted visitation, or if the petitioner is unable to visit the grandchild without court intervention. The Supreme Court concluded the Washington statue was overbroad because it places no limits either on the persons who may petition for visitation or other circumstances in which such a petition may be granted. The Supreme Court declined to find specific non-parental visitation statutes violate the due process clause as a per se matter, because adjudication of these issues must occur on a case-by-case basis.
 {¶ 16} Appellants here argue the Supreme Court's decision inTroxel, requires the trial court to defer to their decisions regarding the minor child Christopher's upbringing.
 {¶ 17} We find the case at bar is significantly different from the Troxel case. Most compeling, the parent in Troxel
did not attempt to completely terminate the relationship between the children and their grandparents. The mother in Troxel
conceded the relationship between the girls and their grandparents was important, and merely disagreed with the grandparents regarding how much contact they should have. This contrasts starkly with the case at bar, where it appears appellants sought to terminate all contact between appellee and the minor child Christopher, notwithstanding the father-son relationship between them, and notwithstanding the continued relationship between Christopher's sister and appellee.
 {¶ 18} Appellee points out appellants perpetrated fraud on the court by alleging in the dissolution proceedings that appellee was the father of both minor children.
 {¶ 19} Appellee also points out he has presented evidence it is in Christopher's best interest to continue the relationship between appellee and the child. There is no evidence in the record determining the relationship between the child and appellee would be detrimental to the child's best interest.
 {¶ 20} Further, the trial court directed the parties to individually or as a group submit to whatever counseling might be necessary to monitor the unique situation in which this family found itself.
 {¶ 21} R.C. 3909.051 provides in determining whether to grant companionship or visitation to a grandparent, relative, or other person, the court should consider certain factors, including the prior interaction and interrelationship of the child's parents, siblings, and other persons related by consanguinity or affinity, with the person who requested companionship or visitation if that person is not a parent, sibling, or relative of the child.
 {¶ 22} We find the case before us is vastly distinguishable from the facts in Troxel, and we further find Ohio's companionship statute is not overbroad as applied to the case at bar. We conclude the trial court did not err in refusing to amend the decree of dissolution to the extent that would completely terminate the relationship between appellee and the minor child.
 {¶ 23} The assignment of error is overruled.
 {¶ 24} For the foregoing reasons, the judgment of the Court of Common Pleas, Domestic Relations Division, of Licking County, Ohio, is affirmed.
Gwin, P.J., Edwards, J., and Boggins, J., concur.